UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

AVADAWN HARGETT                                                PLAINTIFF

v.                                        CIVIL ACTION NO. 3:14-cv-00869-CRS-CHL

JEFFERSON COUNTY
BOARD OF EDUCATION                                             DEFENDANT

Memorandum Opinion

I.      Introduction

        This matter is before the Court on the motion of Defendant the Jefferson County Board of

Education (JCBE) for summary judgment under Federal Rule of Civil Procedure 56(a), ECF No.

43. Plaintiff Avadawn Hargett responded, ECF No. 43. JCBE replied, ECF No. 44. For the

reasons discussed below, the Court will grant JCBE's motion for summary judgment.

II.     Background

        B.      Hargett's Employment at Audubon Traditional Elementary School

        Hargett began her employment with the Jefferson County Public Schools (JCPS) in

August 1987. Hargett Dep. 3, ECF No. 40-2. In 2007, Hargett began teaching third grade at

Audubon Traditional Elementary School ("Audubon"). Id.; Notification of Change 2, ECF No.

40-6. In May of 2013, Hargett requested a leave of absence under the Family Medical Leave Act

(FMLA), which was granted. Notification of Change 2, ECF No. 40-7; Designation Notice

FMLA, 2, ECF No. 40-8. Hargett and Audubon intended that her FMLA leave of absence would

end in August 2013. Notification of Change 2, ECF No. 40-7.

Hargett's planned return date, however, was extended until September 2013 because she was scheduled to undergo knee surgery. Notification of Change 2, ECF No. 40-9; Hargett Dep. 6, ECF No. 40-2. Hargett later provided JCBE a series of four doctor's notes from Dr. Joseph F. Catalano that extended the date on which Hargett was scheduled to return to teaching at Audubon. The first doctor's note was dated August 6, 2013. 8/6/13 Return to Work Note 2, ECF No. 40-10. This note stated, "Avadawn T Hargett will undergo knee surgery on 8-9-13. She will be off work from 8-9-13 until tentatively 9-16-13." *Id*. The second doctor's note from Dr. Catalano was dated August 23, 2013. 8/23/13 Return to Work Note 2, ECF No. 40-11. The note asserted that Hargett was to "remain off work until her next appointment on September 27th" and that she would be "reevaluated then." *Id*. The third doctor's note from Dr. Catalano was dated September 23, 2013. The noted affirmed, "It is my medical opinion that Avadawn T Hargett is to remain off work from today to 10/6/2013 and may return to work on 10/7/2013. No prolonged standing or walking. These restrictions are in effect for 4 weeks." 9/23/13 Return to Work Note 2, ECF No. 40-12. The fourth and final doctor's note was dated October 4, 2013. 10/4/13 Return to Work Note 2, ECF No. 40-13. The note stated, "Avadawn T Hargett was seen in our office today for evaluation. It is my medical opinion that Avadawn T Hargett should remain out of work until 1/1/2014." *Id*.

Like all JCPS teachers, Hargett had building rights. Hargett Dep. 8, ECF No. 40-2. As described by Hargett, building rights are a right to work in a particular building. *Id*. They are not the right to teach a particular grade. *Id*. Building rights derive from JCBE's collective bargaining agreement with the Jefferson County's Teachers Association (JCTA). JCBE-JCTA Agreement 2, ECF No. 40-14. Under this agreement, "[t]he Employer will keep the employee's assignment

2

available upon resumption of assigned duties provided: . . . The employee's planned absence does not exceed ninety (90) days." *Id.*

Hargett's planned absence exceeded 90 days from the date when she began her FMLA leave. *See* Notification of Change 2, ECF No. 40-15 (asserting that Hargett's building rights expired on November 20, 2013); 10/4/13 Return to Work Note 2, ECF No. 40-13 Because Hargett's planned absence exceeded 90 days, Tiffany Marshall, the Audubon's principal, hired a new teacher to take Hargett's third grade teaching position. Notification of Change 2, ECF No. 40-16 (stating "on medical leave per documentation until 01/06/2014. Please contact HR for assignment upon return."). The new teacher began teaching the third grade class on October 19, 2013. Marshall Aff. ¶ 7, ECF No. 40-17.

Hargett attempted to return to work on November 6, 2013, after Marshall had filled her third grade teaching position. 11/6/13 Email Exchange 2, ECF No. 40-20. Upon returning, she provided a fifth doctor's note from Dr. Catalano. 11/4/13 Return to Work Note 2, ECF No. 40-19. Dr. Catalano asserted, "It is my medical opinion that Avadawn T Hargett may return to work on 11/6/2013 with the following restrictions: No prolonged walking or standing. This work note suprecedes [sic] any prior note listing return to work as January 2014." *Id.*

Shortly thereafter, Marshall offered her a position teaching a first grade class. Marshall Aff. ¶ 8, ECF No. 40-17. Hargett rejected the offered position. *Id.* ¶ 9. In an email written to the EEOC, Hargett explained that she had rejected the offered position because Marshall would not accept the following three "requested reasonable accommodations/restrictions" that she had suggested: (1) that she and her students walk with another class and teacher to the lunchroom and to recess since she walked slowly, (2) that a teacher assistant walk with Hargett and her class to the computer lab and during bathroom times, and (3) that a teacher assistant help her and check

3

on her class when they left the school building during a fire drill. 12/19/13 EEOC Email 2, ECF No. 40-24. Hargett testified that she did not know if there were teachers' assistants available to assist her with her class. Hargett Dep. 11, ECF No. 40-2.

Hargett also testified that she would have preferred to teach fourth grade, for which she says there was a position available. *Id*. at 7–8. She specified, "[F]irst grade required more physical demands. And [Marshall] could have put the teacher she hired in the first grade, and coming up in that January, she could have given me a fourth grade position . . . So that was a vacancy in fourth and first, and she wouldn't give me my third grade or fourth grade that would fit my physical needs." *Id*. Despite her assertions that allowing her to teach fourth grade would have been a reasonable accommodation, Hargett also recognized that her building rights did not guarantee her the right to teach a certain grade. *Id*. at 8.

Hargett also conceded that JCBE offered her a wheelchair to assist her with transitioning to working with a first grade class. *Id*. at 12. But Hargett did not consider the wheelchair a reasonable accommodation because her "doctor wanted [her] moving, not in a wheelchair" and "I could move through [the classroom] with a cane." *Id*. She attested:

> And the wheelchair is just trying to get through the hallways with the students going in both directions and classes going in both direction and classes going, when I could get through with the cane and use that as an assistance. I had some assistance, and that's what was available to the doctor, because he knew my condition, and [JCBE] didn't.

*Id*.

Hargett also testified about taking her FMLA leave of absence. She agreed that no one at the Jefferson County Public Schools had suggested to her that she had improperly taken FMLA leave or questioned that medical leave was necessary. *Id*. at 16. She also confirmed that no one had suggested to her that the reason she could not be placed back into her old teaching position

4

was that she had inappropriately taken medical leave. *Id*. Hargett also verified that she applied and obtained disability benefits for the time that she had missed for her knee surgery. *Id*. at 6.

    B.    <u>Hargett's Employment at Kammerer Middle School</u>

On January 8, 2014, Bill Allison, a JCTA representative emailed JCBE. 1/08/14 Email, ECF No. 40-25. He stated, "Ms. Hargett is ready and available for placement at another school. She will accept any class above the 3rd grade. She would prefer high school rather than middle and as close as possible to her home in Prospect." *Id*. The next day, JCBE emailed Hargett and several other people with a job placement. 1/09/14 Email, ECF No. 40-26. The email specified, "Avadawn Hargett will return from Leave on Monday, January 13th. She will report to Kammerer Middle School and teach 8th grade Social Studies." *Id*.

Hargett began working at Kammerer Middle School ("Kammerer") on January 13, 2014 under the supervision of David Armour, the principal. Hargett Dep. 16, ECF No. 40-2. She also worked with Carolyn Smith, the assistant principal. *Id*. At Kammerer, Hargett asked for a stool or chair that sat up high to accommodate her health condition in the classroom. *Id*. at 17. Hargett's request was granted. *Id*.

About a month after Hargett began teaching at Kammerer, she met with Smith to review her job responsibilities. Smith Aff. ¶ 4, ECF No. 40-27. Smith asked Hargett to participate in hall monitoring between morning classes. *Id*.; Hargett Dep. 17, ECF No. 40-2. Morning hallway monitoring duties required Hargett to stand at an assigned location in the hallway approximately 50 feet from her classroom for two to three minutes while students walked from one classroom to another. Smith Aff. ¶ 4, ECF No. 40-27. At the meeting, Hargett did not mention to Smith any restrictions on her ability to complete her morning hall monitoring duties. *Id*. ¶ 5.

Hargett performed morning hallway monitoring duties for several weeks. Hargett Dep. 18, ECF No. 40-2. Hargett, however, believed her morning hallway monitoring duties would place her knee at risk of re-injury because she was told to stand in the middle of the hall with students "rushing" from both directions. *Id*. at 17. Additionally, her monitoring duties "caused more pain than [she] had had before" and that she "wasn't able to move." *Id*. at 18.

Smith and Hargett discussed ways to accommodate her knee injury while she performed her morning hallway monitoring duties. *Id*. Smith told Hargett that she could move around the hallway, bring her stool into the hallway, or stand in an alcove that was away from the hallway traffic. *Id*.; *see also* Smith Aff. ¶ 7, ECF No. 40-27 (explaining accommodations that Smith offered Hargett).

On April 7, 2014, Hargett submitted a doctor's note. *Id*. ¶ 8. The note stated:

> Avadawn T Hargett was seen in our office on 3/31/2014. She is here for continued treatment regarding orthopedic condition which started August 2013. She has undergone surgery, 4 months of physical therapy, along with rest. She still has some impairments resulting in work restrictions of limited walking and standing. After discussion of her job duties, it is determined she is to avoid hall duty to reduce the risk of re-injury to the knee.

3/31/14 Return to Work Note 2, ECF No. 40-28. In response, Smith contacted Toni Kelman, a JCPS leave administrator, about the doctor's note. Kelman Letter 2–3, ECF No. 40-29. Kelman advised Smith to send Hargett home until she provided an updated note allowing her to fulfill her teaching duties in their entirety. *Id*. at 2; Smith Aff. ¶ 9, ECF No. 40-27. Kelman then contacted Dr. Catalano's office for more information. Kelman Letter 2–3, ECF No. 40-29. Dr. Catalano's assistant told Kelman that Hargett could perform her morning hallway monitoring duties if she were given a stool and allowed to sit at the side of the hallway. *Id*. at 3.

Hargett remained off work for two days and returned to teaching at Kammerer on April 14, 2014. Smith Aff. ¶ 10, ECF No. 40-27. Hargett was eventually paid for these days. Hargett

Dep. 19, ECF No. 40-2. Armour later agreed to change her hallway monitoring schedule, and she participated in afternoon hall monitoring for the remainder of the school year. *Id*.

At the end of the school year, Armour asked Hargett why she was not retiring. *Id*. Then, Smith told Hargett that if she did not participate in morning hall monitoring duty or take medical leave, she would not be eligible for health insurance. *Id*.

C.     Hargett's Disability Retirement

Thereafter, Hargett applied for disability retirement. *Id*. The Kentucky Teachers' Retirement System (KTRS) received her application. Applicant Statement of Disability 2, ECF No. 40-30. The application's fourth question asks, "Was the work stoppage due to illness which renders you incapable of carrying out your duties?" *Id*. Hargett checked "yes" in response. *Id*. She wrote, "Breathing difficulties got progressively worse teaching in poor environment and work conditions and a school with no windows. Walking problems started March 2013. I use a cane to walk." *Id*.

Three physicians' reports accompanied Hargett's application for disability retirement. The first report was completed by Dr. Timothy R. Killeen, who confirmed that Hargett suffered from poorly controlled, severe asthma. Killeen R. 2, ECF No. 40-31. Dr. Killeen also wrote that he did not believe Hargett would be able to return to work, even if corrective measures were taken. *Id*. at 3. The second report was completed by Dr. Catalano. Catalano R. 2, ECF No. 40-33. Dr. Catalano wrote that he had diagnosed Hargett with knee pain and osteoarthritis in her right knee. *Id*. He similarly concluded that he did not believe Hargett would be able to return to work, even with the addition of corrective measures. *Id*. at 3. The third report was completed by Dr. Killeen, who again wrote that Hargett suffered from severe persistent asthma. Killeen R. 2, ECF

No. 40-32. He again checked that he did not expect Hargett to be able to return to work, regardless of whether corrective measures were taken. *Id*. at 3.

KTRS approved Hargett's application for disability retirement with an effective day of July 1, 2014. 7/22/14 KTRS Letter 2, ECF No. 40-34. KTRS affirmed, "Disability retirees may not be employed whether paid or voluntary in any position that requires the same job duties or qualifications as a position under KTRS whether inside or outside of Kentucky[,] nor are they allowed to hold a position that would entitle them to membership in any other publically funded retirement system." *Id*. KTRS also noted that Hargett would need to submit updated medical information in July 2015 to remain eligible for disability retirement. *Id*.

In July 2014, a KTRS counselor notified Hargett that she was eligible to purchase service credit for the 90 days' leave of absence she had taken during the 2013 to 2014 school year. 7/13/14 KTRS Letter 2, ECF No. 40-35. The purchase would increase Hargett's service credit from 24.52 years to 25.0 years. *Id*. Hargett accepted the offer to purchase the service credit. *Id*.

In July 2015, Hargett submitted updated medical information to maintain her disability retirement. Catalano R. 2, ECF No. 40-37. Dr. Catalano provided that Hargett "continues to have pain in her knee. Recently had an acute exacerbation. She uses a cane. Complains of swelling— no redness." *Id*. He also noted that Hargett had exacerbated her pre-existing osteoarthritis in her right knee after falling while disembarking an airplane. *Id*. Dr. Catalano concluded that, even with corrective measures, Hargett was unlikely to be able to return to work because she would be unable to stand or walk for any substantive length of time. *Id*. at 3.

Also in July 2015, Hargett was required to certify that she had not been employed during the 2014 calendar year to continue her disability requirement. Disability Earning Aff. 2, ECF No.

8

40-38. The KTRS affidavit, which Hargett signed, stated, "Members retired on disability are prohibited from any type of employment related to teaching or education related work." *Id.*

In 2016, because she had twenty-five years of service credit and two years of service credit during the time she had received disability retirement payments, Hargett became eligible for full retirement. 7/11/2016 KTRS Letter, ECF No. 40-36.

### D.   Procedural History

In December 2014, Hargett filed suit in this Court against JCBE. Compl. 1, ECF No. 1. She asserts that JCBE violated her rights under the Americans with Disabilities Act (ADA), as amended, 42 U.S.C. § 12101, *et seq.* and the Kentucky Civil Rights Act (KCRA), Ky. Rev. Stat. Ann. § 344.010, *et seq.* by discriminating against her because of her actual or perceived disability (Count I). *Id.* ¶¶ 29–32. She also asserts that JCBE interfered with her rights under the Family Medical Leave Act (FMLA), as amended, 29 U.S.C. § 2601, *et seq.* by failing to restore her to her third-grade teaching position after her leave of absence had expired (Count II, part 1). *Id.* ¶¶ 33–36. She finally asserts that JCBE retaliated against her, thereby violating her FMLA rights, by terminating her (Count II, part 2). *Id.* ¶¶ 37–40. She seeks (1) lost wages and benefits, (2) compensatory damages, including lost future earning capacity, (3) punitive damages for violations of the ADA, (4) liquidated damages for violations of the FMLA, (5) pre- and post-judgement interest, and (6) costs and fees. *Id.* at 6.

### III.   Standard

JCBE now moves for summary judgment on Hargett's claims. Mot. Summ. J. 1, ECF No. 40. Before granting a motion for summary judgment, a court must find that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of establishing

the nonexistence of any issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party satisfies this burden by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c). When resolving a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

IV.   Whether Summary Judgment Should Be Granted on Hargett's Disability Discrimination Claims Asserted under the ADA and KCRA

The ADA provides, "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112. Similarly, the KCRA states that "[i]t is an unlawful practice for an employer . . . [t]o fail or refuse to hire, or to discharge any individual, or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, because . . . the person is a qualified individual with a disability." Ky. Rev. Stat. Ann.  § 344.040(1)(a). Courts analyze the KCRA congruent with the ADA's statutory scheme and terms. *Howard Baer, Inc. v. Schave*, 127 S.W.3d 589, 592 (Ky. 2003); *Henderson v. Ardco, Inc.*, 247 F.3d 645, 649 (6th Cir. 2001).

To assert an ADA disability discrimination claim, a plaintiff must show that (1) "he is a disabled person within the meaning of the ADA," (2) "he is qualified, that is, with or without reasonable accommodation which he must describe, he is able to perform the essential functions of the job," and (3) "the employer terminated him because of his disability." *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1047 (6th Cir. 1998). The plaintiff may provide direct

10

evidence of discrimination. *Id*. He may instead rely on circumstantial evidence and the burden shifting method articulated in *McDonnell Douglas Corp. v. Green*, 4111 U.S. 792 (1973), as refined by *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). *Id*.

JCBE argues that this Court should grant summary judgment on Hargett's ADA and KCRA claims because (1) Hargett was not "otherwise qualified" to perform the essential functions of a teacher, (2) even if she was "otherwise qualified," she forfeited this status by declining reasonable accommodations, (3) she was not subjected to an "adverse employment action," (4) it had a legitimate, nondiscriminatory reason for reassigning Hargett to Kammerer, and (5) regardless, it is entitled to assert the *Faragher-Ellerth* affirmative defense. Mem. Supp. Mot. Summ. J. 12–22, ECF No. 40-1.

A.  Whether Hargett Was "Otherwise Qualified" to Perform the Essential Functions of a Teacher

JCBE argues that summary judgment is appropriate on Hargett's claims under the ADA and KCRA because Hargett was not "otherwise qualified" to perform the essential functions of a teacher. *Id*. at 13. JCBE explains that Hargett and her doctors certified that she could not perform the essential functions of a teacher when she accepted disability retirement benefits that began on July 1, 2014. *Id*. at 13. JCBE further expounds that Hargett does not have a viable disability claim between when she took a leave of absence for her knee surgery in August 2013 and when she began receiving retirement benefits because she received the full benefit of her salary and disability benefits. *Id*. at 14–15. In response, Hargett asserts that the "entirety of the discrimination against [her] took place prior to her applying for and receiving retirement benefits" on July 1, 2014. Resp. Opp. Mot. Summ. J. 7, ECF No. 43. Moreover, there is a genuine dispute of material fact regarding whether she received the full benefit of her salary and disability benefits before July 1, 2014. *Id*.

11

The "otherwise qualified" inquiry requires a "consideration not only of the handicapped applicant's ability to perform the job's essential function, but also whether a reasonable accommodation by the employer would enable the handicapped person to perform those functions." *Hall v. U.S. Postal Serv.*, 857 F.2d 1073, 1078 (6th Cir. 1988).[1] Accordingly, an employee will be "otherwise qualified" if an employer's reasonable accommodation would permit the employee to perform the job's essential functions. *Leeds v. Potter*, 249 F. App'x 442, 448 (6th Cir. 2007).

Here, the Court finds that Hargett was not "otherwise qualified" after July 1, 2014 because, as part of her application to receive disability retirement, she and her physicians certified that she could not perform the essential functions of a teacher. Killeen R. 2, ECF No. 40-31; Catalano R. 2, ECF No. 40-33; Killeen R. 2, ECF No. 40-32. But there remains a genuine dispute of material fact as to whether Hargett was "otherwise qualified" between the time when she took a leave of absence for her knee surgery in August 2013 and when she began receiving retirement benefits in July 2014. Whether she received the full benefit of her salary and disability benefits does not concern whether she could perform her position's essential functions. Therefore, the Court declines to grant summary judgment on Hargett's ADA and KCRA claims because she was not "otherwise qualified" to the extent that the claims are based on events happening before July 2014.

   B.   <u>Whether Hargett Forfeited her "Otherwise Qualified" Status by Declining Accommodations that JCBE Asserts Were Reasonable</u>

JCBE argues that even if Hargett was "otherwise qualified," she forfeited this status when she rejected reasonable accommodations that it offered for her knee condition, and thus summary

---

[1] The ADA parallels the protections of the Rehabilitation Act and thus cases brought under the acts are analyzed similarly. *Maddox v. University of Tenn.*, 62 F.3d 843, 846 n.2 (6th Cir. 1995).

judgment should be granted on her ADA and KCRA claims. Mem. Supp. Mot. Summ. J. 15–17, ECF No. 40-1. Hargett contends that there is a genuine dispute of material fact regarding whether the accommodations that JCBE offered were reasonable. Resp. Opp. Mot. Summ. J. 8–9, ECF No. 43.

> Reasonable accommodations may include:
>
> making existing facilities used by employees readily accessible to and usable by individuals with disabilities, job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9)(B).

To determine if an accommodation is reasonable, "it may be necessary for the covered entity to initiate an informal interactive process with the individual with a disability in need of the accommodation." 29 C.F.R. § 1630.2(o)(3). The interactive process is intended to "identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." *Id*. Although the interactive process is not in the ADA's text, the United States Court of Appeals for the Sixth Circuit has declared that the process is mandatory and that both parties must participate in good faith. *Kleiber v. Honda of Am. Mfg.*, 485 F.3d 862, 871 (6th Cir. 2007).

An employer participates in good faith when "it readily meets with the employee, discusses any reasonable accommodations, and suggests other possible positions for the plaintiff." *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 203 (6th Cir. 2010). When there is more than one reasonable accommodation, the employer has the discretion of which accommodation to provide. *Smith v. Honda of Am. Mfg*., 101 F. App'x 20, 25 (6th Cir. 2004). If

an employee rejects the employer's offer of a reasonable accommodation, he "forfeits the status as a 'qualified individual with a disability.'" *Id*. (internal citations omitted).

In this case, the evidence shows that JCBE engaged in an informal interactive process with Hargett to discuss her limitations and to discuss potential accommodations, and that Hargett rejected several reasonable accommodations. When she returned to work at Audubon following her leave of absence and was offered a teaching position with a first grade class, she demanded (1) that she and her students walk with another class and teacher to the lunchroom and to recess since she walked slowly, (2) that a teacher assistant walk with Hargett and her class to the computer lab and during bathroom times, and (3) that a teacher assistant help her and check on her class when they left the school building during a fire drill. 12/19/13 EEOC Email 2, ECF No. 40-24. JCBE denied these requests and instead offered her a wheelchair to use during class transitions. Hargett Dep. 12, ECF No. 40-2. Hargett rejected the wheelchair. *Id*.

Hargett does not provide any evidence, such as medical testimony, showing that the wheelchair was not a reasonable accommodation. She testified that her "doctor wanted [her] moving, not in a wheelchair" and that she "could move through [the classroom] with a cane." *Id*. Yet, a wheelchair would accomplish the same objective—allowing her to keep up with her class during transition times and during a fire drill—as would the accommodations that she proposed.

Similarly, when Hargett transitioned to Kammerer Middle School and was asked to participate in morning hallway monitoring duty, Smith and Hargett discussed ways to accommodate her knee injury. *Id*. at 18. Smith told Hargett that she could move around the hallway, bring her stool into the hallway, or stand in an alcove that was away from the hallway traffic. *Id*.; *see also* Smith Aff. ¶ 7, ECF No. 40-27 (listing accommodations that Smith offered).

14

Hargett rejected the school's proposed accommodations when she gave JCBE a doctor's note stating that she should avoid morning hallway duties altogether. Smith Aff. ¶ 8, ECF No. 40-27.

Hargett does not provide evidence showing that moving around the hallway, bringing a stool into the hallway, or standing in an alcove away from the hallway were not reasonable accommodations. Additionally, Dr. Catalano's assistant stated that Hargett could perform morning hallway monitoring duties if she were permitted a stool and allowed to stand at the side of the hallway. Kelman Letter 3, ECF No. 40-29. Because Hargett rejected JCBE's reasonable accommodations, she forfeited her status as a qualified individual and thus summary judgment is appropriate on the remainder of her ADA and KCRA claims.

C.  Whether Hargett was Subjected to an "Adverse Employment Action"

JCBE alternatively maintains that summary judgment should be granted on Hargett's ADA and KCRA claims because she was not subjected to an adverse employment action. Mem. Supp. Mot. Summ. J. 17–19, ECF No. 40-1. JCBE explains that Hargett's transfer to Kammerer and decision to take voluntary disability retirement did not amount to a loss of title, pay, or benefits, or a constructive discharge. *Id.* Hargett contends in opposition that a "reasonable jury could find that Ms. Hargett was subjected to Adverse Employment actions when she was transferred to Kammerer, when she was sent home after giving her administration a doctor's note stating she couldn't perform hall monitor duty, and when she was constructively discharged and forced into retirement." Resp. Opp. Mot. Summ. J. 9–12, ECF No. 43.

*i. Whether Hargett's Transfer to Kammerer was an Adverse Employment Action*

When a plaintiff is transferred to a new location without a change in wages or benefits, he must show that there has been a constructive discharge to file an adverse employment action. *Darnell v. Campbell Cty. Fiscal Ct.*, 731 F. Supp. 1309, 1313 (E.D. Ky. 1990), *aff'd*, 924 F.2d

1057 (6th Cir. 1991). To demonstrate constructive discharge, the plaintiff must show "(1) the employer deliberately created intolerable working conditions, as perceived by a reasonable person, (2) the employer did so with the intention of forcing the employee to quit, and (3) the employee actually quit." *Regan v. Faurecia Auto. Seating, Inc.*, 679 F.3d 475, 481 (6th Cir. 2012) (citing *Savage v. Gee*, 665 F.3d 732, 739 (6th Cir. 2012)).

In this case, Hargett does not dispute that the transfer to Kammerer did not change her wages or benefits. Additionally, the evidence shows that the transfer did not amount to a constructive discharge; Hargett was transferred only after a JCTA representative emailed JCBE and stated that she would "accept any class above the 3rd grade" and would prefer to be "as close as possible to her home in Prospect." 1/08/14 Email, ECF No. 40-25. Therefore, Hargett's transfer to Kammerer did not constitute an adverse employment action.

> ## ii. Whether Hargett's Being Sent Home after Giving JCBE a Doctor's Note was an Adverse Employment Action

The Sixth Circuit has held that "a suspension *with* pay and full benefits pending a timely investigation into suspected wrongdoing is not an adverse employment action." *Peltier v. United States*, 388 F.3d 984, 988 (6th Cir. 2004) (citing *White v. Burlington N. & Santa Fe R. Co.*, 364 F.3d 789, 803 (6th Cir. 2004)) (emphasis in original). For example, in *Jackson v. City of Columbus*, the major suspended a police chief for four days with pay pending an investigation of his alleged improper conduct in office. 194 F.3d 737, 744 (6th Cir. 1999). The police chief sued the City of Columbus for racial discrimination. *Id.* at 745. The district court found that the police chief had not demonstrated that he had been subjected to an adverse employment action. *Id.* at 752. On appeal, the Sixth Circuit affirmed the district court's ruling on the issue. *Id.* The appellate court explained that the police chief had not shown that he had been subjected to an adverse employment action, noting that he had not provided any evidence "suggesting that he

16

was subjected to a termination of employment, a change in salary, demotion, loss of benefits, decreased work hours, or significantly diminished material responsibilities." *Id.*

Similarly, Hargett remained off work for two days and returned to her same teaching position at Kammerer. Smith Aff. ¶ 10, ECF No. 40-27. Hargett was paid for these two days. Hargett Dep. 19, ECF No. 40-2. Because Hargett received her pay and benefits for when she was suspended, she cannot show that her being sent home constituted an adverse employment action.

### iii. Whether Hargett was Constructively Discharged and Forced into Retirement and, if so, Whether these Actions were Adverse Employment Actions

Hargett argues that she was "forced to work without the simplest accommodation to help alleviate her disability" and that "the working conditions had become intolerable." Resp. Opp. Mot. Summ. J. 12, ECF No. 43. When an employee retires, his retirement is "presumed to be voluntary." *Nunn v. Lynch*, 113 F. App'x 55, 59 (6th Cir. 2004).

The facts in this case do not support Hargett's assertions that she was not provided any accommodations and thus was subjected to "intolerable" working conditions. For example, when Hargett returned to Audubon and was asked to teach a first grade class, JCBE offered her a wheelchair to use during class transitions. Hargett Dep. 12, ECF No. 40-2. When Hargett transitioned to Kammerer Middle School and was asked to participate in morning hallway monitoring duties, the vice principal told Hargett that she could move around the hallway, bring her stool into the hallway, or stand in an alcove that was away from the hallway traffic. *Id.* at 18. Given that the evidence does not support a finding that Hargett was constructively discharged, her allegedly "forced retirement" was not an adverse employment action.

Hargett's failure to show that she was subjected to an adverse employment action provides additional grounds for a grant of summary judgment on her ADA and KCRA claims.

D.   Whether JCBE Had a Legitimate, Nondiscriminatory Reason for Reassigning
Hargett, and Whether this Reason was Pre-textual

JCBE further contends that summary judgment should be granted on Hargett's ADA and

KCRA claims even if it finds that Hargett established a prima facie case of discrimination

because it had a legitimate, non-discriminatory reason for reassigning her from Audubon to

Kammerer that was not pretextual. Mem. Supp. Mot. Summ. J. 19–21, ECF No. 40-1. JCBE

specifies that it followed the collective bargaining agreement's terms and filled Hargett's

teaching position with another teacher only after she had submitted a doctor's note stating that

she would be on a leave of absence until January 1, 2014, which was more than 90 days after she

had begun her FMLA leave. *Id*. Hargett argues, however, that a "reasonable person could find

that Ms. Hargett was transferred not because the school thought she would be out for a longer

period of time but instead to avoid having to accommodate her disability." Resp. Opp. Mot.

Summ. J. 12–13, ECF No. 43. Moreover, "[a]t a minimum Ms. Hargett's [sic] has produced

enough evidence to create a genuine issue of material fact as to whether the defendants [sic]

given reason for her transfer was actually pretextual and only given to cover up their

discriminatory intent." *Id*.

When a plaintiff establishes a prima facie case of disability discrimination, the burden

shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse

employment action. *See Laws v. HealthSouth N. Ky. Rehab. Hosp. Ltd. P'ship*, 508 F. App'x

404, 413 (6th Cir. 2012). If the defendant is able to provide such a reason, the plaintiff must

"prove 'by a preponderance of the evidence' that the defendant's proffered reasons were not its

true reasons, but were merely a pretext for illegal discrimination." *Kocsis v. Multi-Care Mgmt.*,

97 F.3d 876, 883 (6th Cir. 1996) (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248,

252–53 (1981)). The plaintiff must show that (1) "the proffered reasons had no basis in fact", (2)

18

"the proffered reasons did not actually motivate the action," or (3) the proffered reasons "were insufficient to motivate the action." *Id.* (citing *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)).

In this case, even if Hargett were able to show that she was subjected to discrimination prohibited under the ADA and the KCRA, JCBE has provided evidence showing that there was a legitimate, non-discriminatory reason for reassigning her to Kammerer. JCBE's collective bargaining agreement with JCTA states, "[t]he Employer will keep the employee's assignment available upon resumption of assigned duties provided: . . . The employee's planned absence does not exceed ninety (90) days." *Id.* JCBE-JCTA Agreement 2, ECF No. 40-14. Hargett's planned absence exceeded 90 days from the date when she began her FMLA leave. *See* Notification of Change 2, ECF No. 40-15 (asserting that Hargett's building rights expired on November 20, 2013); 10/4/13 Return to Work Note 2, ECF No. 40-13. Because Hargett's planned absence exceeded 90 days, JCBE hired another teacher to fill her third grade teaching position, Marshall Aff. ¶ 7, ECF No. 40-17, which led to Hargett's transfer to Kammerer.

Hargett has not provided evidence demonstrating that the length of her planned absence had no basis in fact, did not motivate her eventual transfer to Kammerer, or was insufficient to motivate her eventual transfer to Kammerer. Thus, JCBE's legitimate, non-discriminatory reason for reassigning Hargett provides another ground for granting its motion for summary judgment on her ADA and KCRA claims.

E.  Whether the *Faragher-Ellerth* Defense Applies to Hargett's Disability Discrimination Claim

JCBE lastly argues that the Court should grant summary judgment on Hargett's ADA and KCRA claims because its anti-discrimination policy entitles it to the affirmative *Faragher-Ellerth* defense. Mem. Supp. Mot. Summ. J. 21–22, ECF No. 40-1. Hargett asserts that the

defense does not apply in this case because the case does not involve a hostile work environment claim and because she availed herself of the reporting system established by JCBE and JCBE failed to correct the discrimination. Resp. Opp. Mot. Summ. J. 13–14, ECF No. 43.

The *Faragher-Ellerth* defense consists of two elements: (1) "that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior" and (2) the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998). The EEOC asserts that the *Faragher-Ellerth* defense applies to "harassment by supervisors based on race, color, sex (whether or not of a sexual nature), religion, national origin, protected activity, age, or disability." EEOC Enforcement Guidance, No. 915.002, sex. II, 5, dated June 18, 1999 (internal citations omitted).

Because Hargett does not allege that she was a victim of harassment by a supervisor, the *Faragher-Ellerth* defense does not apply in this case. *See* Compl. ¶¶ 33–36, ECF No. 1. Thus, summary judgment on her discrimination claims is inappropriate on this ground.

V.    Whether Summary Judgment Should Be Granted on Hargett's FMLA Claims

The FMLA entitles eligible employees to up to twelve weeks of leave per year for certain types of events, including "a serious health condition that makes the employee unable to perform the functions of [his or her] position." 29 U.S.C. § 2612(a). JCBE argues that summary judgment is appropriate on Hargett's FMLA claims. Mem. Supp. Mot. Summ. J. 22–25, ECF No. 40-1.

A.    Whether Hargett's FMLA Interference Claim Fails

JCBE argues that summary judgment is appropriate on Hargett's FMLA interference claim because she received FMLA benefits and the leave to which she is entitled. Mem. Supp.

20

Mot. Summ. J. 22–23, ECF No. 40-1. Additionally, JCBE asserts that "there is no evidence whatsoever to support the allegation that Hargett was 'entitled' to return to her exact same classroom upon her return from leave." *Id.* at 23. Hargett maintains, however, that JCBE failed to offer her a position that was equivalent to teaching third grade upon her return from her FMLA leave of absence and thus she has established a prima facie case of FMLA interference. Resp. Opp. Mot. Summ. J. 15–16, ECF No. 43.

To assert an FMLA interference claim, the plaintiff must establish "(1) [s]he was an eligible employee, (2) defendant was a covered employer, (3) [s]he was entitled to leave under the FMLA, (4) [s]he gave defendant notice of [her] intent to take leave, and (5) the defendant denied [her] FMLA benefits or interfered with FMLA rights to which [s]he was entitled." *Jaszczyszyn v. Advantage Health Physician Network*, 504 F. App'x 440, 446 (6th Cir. 2012) (citing *Harris v. Metro Gov't of Nashville & Davisdon Cty., Tenn.*, 594 F.3d 476, 482 (6th Cir. 2010)). The issue in an FMLA interference claim is "whether the employer provided its employee the entitlements set forth in the FMLA." *Arban v. West Publ'g Corp.*, 345 F.3d 390, 401 (6th Cir. 2003) (citing *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 159 (1st Cir. 1998)).

In this case, the evidence fails to demonstrate that JCBE denied her FMLA benefits or interfered with her FMLA rights. When Hargett requested an FMLA leave of absence, her request was granted. Notification of Change 2, ECF No. 40-7; Designation Notice FMLA 2, ECF No. 40-8. When Hargett requested an extension of her FMLA leave, her extension was also granted. Notification of Change 2, ECF No. 40-9; Hargett Dep. 6, ECF No. 40-2. Moreover, when Hargett attempted to return to work after a planned absence extending beyond 90 days, JCBE attempted to find her a replacement position. JCBE first offered her a position teaching first grade. Marshall Aff. ¶ 8, ECF No. 40-17. Then, when a JCTA representative emailed JCBE

21

stating that Hargett would be willing to accept any class above the third grade, 1/08/14 Email, ECF No. 40-25, JCBE reassigned her to Kammerer. 1/09/14 Email, ECF No. 40-26.

Because JCBE provided Hargett the entitlements set forth in the FMLA, her interference claim fails as a matter of law, and the Court will grant summary judgment on this claim.

      **B.**    <u>Whether Hargett's FMLA Retaliation Claim Fails</u>

JCBE contends that the Court should grant summary judgment on Hargett's FMLA retaliation claim because she has failed to establish that it took an adverse employment action towards her or a causal connection between any adverse employment action and FMLA-protected activity. Mem. Supp. Mot. Summ. J. 24–25, ECF No. 40-1. Hargett argues that she "has produced enough circumstantial evidence to create a genuine issue of material fact as to whether her reassignment was in reality not done for legitimate non-discriminatory reasons but instead done as pretext for her having taken extended FMLA leave." Resp. Opp. Mot. Summ. J. 16–17, ECF No. 43.

To assert an FMLA retaliation claim, the plaintiff must establish "(1) she was engaged in an activity protected by the FMLA; (2) the employer knew that she was exercising her rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to her; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action." *Jaszczyszyn*, 504 F. App'x at 447 (citing *Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 556 (6th Cir. 2006)).

Here, Hargett is unable to show a causal connection between her taking FMLA leave and her transfer to Kammerer. As discussed above, JCBE had a legitimate, non-discriminatory reason for transferring her to Kammerer. Moreover, she conceded that no one at JCPS suggested to her that she had improperly taken FMLA leave or questioned that medical leave was necessary.

Hargett Dep. 16, ECF No. 40-2. She also confirmed that no one suggested to her that she could

not be placed back into her old position because she had inappropriately taken medical leave. *Id.*

       Given that Hargett has not provided evidence demonstrating that her transfer to

Kammerer was in retaliation for her taking FMLA leave, summary judgment is appropriate on

her FMLA retaliation claim.

VI.   <u>Conclusion</u>

       The Court will grant JCBE's motion for summary judgment. An order will be entered in

accordance with this memorandum opinion.

March 9, 2017

**Charles R. Simpson III, Senior Judge**
**United States District Court**

23